UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| TRACEE SHEPPARD, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>STAFFMARK INVESTMENT, LLC; UPS MAIL INNOVATIONS, INC.; and DOES 1 Through 20, Inclusive,<br><br>Defendants. | Case No.  20-cv-05443-BLF<br><br>**ORDER GRANTING DEFENDANTS' MOTIONS TO COMPEL ARBITRATION; AND REMANDING STATE LAW CLAIM**<br><br>[Re: ECF 22, 30] |

Defendant Staffmark Investment, LLC ("Staffmark") moves this Court to compel Plaintiff Tracee Sheppard ("Plaintiff") to arbitrate Plaintiff's individual employment claims against Staffmark, and co-Defendant UPS Mail Innovations, Inc. ("UPSMI") and to stay Plaintiff's Private Attorney General Act ("PAGA") claim pending resolution of the arbitration. *See* Mot. to Compel Arbitration ("Mot."), ECF 22. On September 17, 2020, Plaintiff filed her Opposition to Staffmark's Motion to Compel Arbitration. *See* Opp'n. to Mot. To Compel. ("Opp'n."), ECF 25. Staffmark filed a Reply to Plaintiff's Opposition on September 24, 2020. *See* Reply to Opp'n. ("Reply"), ECF 29. UPSMI filed a Motion to Compel on January 14, 2021. *See* Mot. to Compel Arbitration ("UPSMI Mot."), ECF 30. Plaintiff did not respond to this motion and acknowledged at the February 11, 2021 hearing on Staffmark's motion that the Court's decision would be dispositive of both motions.

For the foregoing reasons, the Court GRANTS Defendants' Motions to Compel Arbitration for Plaintiff's individual Claims One through Five against Staffmark and UPSMI, and those claims are DISMISSED WITHOUT PREJUDICE. Plaintiff's class claims are DISMISSED WITH PREJUDICE as to Plaintiff and DISMISSED WITHOUT PREJUDICE as to the putative class members. In lieu of staying Plaintiff's remaining state law PAGA claim, the Court declines to exercise supplemental jurisdiction over the claim, and it is REMANDED to the Santa Clara County Superior Court.

### I. BACKGROUND[1]

Defendant Staffmark is a staffing agency, which places workers at temporary worksites around the United States, including California. Declaration of Suzanne Perry ("Perry Decl.") ¶ 7, ECF 22-1. Staffmark made an offer of employment to Plaintiff Sheppard on or around February 7, 2019. Perry Decl. ¶ 10. The offer was contingent on Plaintiff's completion of Staffmark's conditional job offer ("CJO") packet, which included the arbitration agreement ("Arbitration Agreement"). Perry Decl. ¶¶ 23-29. The Arbitration Agreement was presented to Plaintiff during the electronic onboarding process. Declaration of Emily Giltner ("Giltner Decl.") ¶¶ 29-32, ECF 22-2. Plaintiff was allowed to complete this process at her own pace. Perry Decl. ¶¶ 18-20;

---

[1] Defendants Staffmark and UPSMI request judicial notice of Plaintiff's First Amended Complaint. *See* ECF 23, 31. Plaintiff's verified complaint is already contained in the record as it is attached to Defendants' Notice of Removal. *See* ECF 1-1. While there is little need to take judicial notice of the complaint as it has already been filed on this docket, Courts may take judicial notice of records of "(1) any court of this state or (2) any court of record of the United States or of any state of the United States." Fed. R. Evid. 201(d). Specifically, "[the Court] may take judicial notice of undisputed matters of public record, . . . including documents on file in federal or state courts." *Harris v. Cty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012). Accordingly, as this document is on file and publicly available, the Court takes judicial notice of Plaintiff's First Amended Complaint.

2

Declaration of Lucero Lopez ("Lopez Decl."), ¶¶ 5-9, ECF 22-3. To finish the onboarding process, Plaintiff had to create a personal password and review and execute an E-Signature Acknowledgment Statement, which stated that her e-signature had the same legal binding effect as if it were a handwritten signature. Perry Decl., ¶¶ 20-24. Plaintiff accessed and electronically signed the Arbitration Agreement during the onboarding process. Lopez Decl. ¶ 12. Plaintiff completed the CJO packet, including signing the Arbitration Agreement, by February 7. *Id.* On February 8, 2019, Plaintiff went on-site to Staffmark to complete the hiring process. *Id.* at ¶¶ 13-15. At that time, Plaintiff was asked whether she had any questions regarding the documents in the CJO packet, including the Arbitration Agreement. *Id.* Plaintiff said that she did not. *Id.*

The Arbitration Agreement covers, in relevant part:

> This Agreement to Arbitrate Claims and Disputes ("Agreement") is made and entered into, by and between Staffmark Holdings, Inc. and its subsidiaries, Staffmark Investment LLC, CBS Personnel Services, LLC, and Kilgore Group, Inc. ("Company") and Tracee Sheppard ("Employee") (collectively the "Parties").
>
> . . .
>
> 1.1. This Agreement between the Parties establishes procedures for resolution by arbitration of any Employment Claim(s) arising out of Employee's application or candidacy for employment, employment, or cessation of employment with Company, whether such Employment Claim(s) are brought by the Employee against the Company or by the Company against the Employee. The Parties agree that any Excluded Claim is not subject to this Agreement.
>
> . . .
>
> 3.1. "Claims Must be Decided by Binding Arbitration." Any and all Employment Claims of any party shall be resolved by final and binding arbitration by a neutral arbitrator in accordance with the terms of this Agreement and not by a court trial or a jury trial in court.

3

CA Standard Arbitration Agreement 15, ECF 22-1. The Arbitration Agreement defines Employment Claims subject to arbitration, in relevant part, as:

> 2.2. "Employment Claim(s)." For purposes of this Agreement, "Employment Claim(s)" shall include: claims arising out of; claims for non-payment of wages, overtime, other compensation or penalties due; … and claims for violation of any federal, state, or other government law, statute, regulation or ordinance, except for claims excluded in the following paragraph. This Agreement is also intended to apply to any Employment Claims the Employee may have against the Company's current or former officers, directors, employees, agents, or customers, or any of the Company's affiliated or related entities; as well as to any claims that the Company or any such persons may have against Employee. All such disputes, whether based on past, present, or future events, shall be resolved only by an arbitrator through final and binding arbitration and not by way or court or jury trial except as otherwise stated in this Agreement.

*Id.*

In late February 2019, Plaintiff was placed by Staffmark on a temporary work assignment at UPSMI, a company which provides domestic and international high-volume mailing services. Lopez Decl. ¶ 23; Perry Decl. ¶¶ 10-12. Plaintiff's job at UPSMI was a sorter, and her duties included removing mail from the conveyer belt, hand sorting the mail based upon zip code, and then placing the mail in the appropriate mail bag. Lopez Decl. ¶¶ 23-24. Although Plaintiff was staffed at other work locations while employed by Staffmark, all of Plaintiff's claims in this litigation arise from Plaintiff's employment while she was assigned at UPSMI. *See generally* FAC. On March 19, 2020, Plaintiff filed a Complaint against Staffmark and UPSMI in the Superior Court of California, with five class action claims. Notice of Removal ¶ 1, ECF 1-1. On June 1, 2020, Plaintiff filed her First Amended Complaint ("FAC") to add a representative cause

of action under the California Private Attorneys General Act ("PAGA"). *See* First Amended Compl. ("FAC"), ECF 1-1, Exh. A. In the FAC, Plaintiff alleges six causes of action: 1) Failure to Provide Meal Periods; 2) Failure to Provide Rest Breaks; 3) Failure to Provide Accurate Itemized Wage Statements; 4) Failure to Pay All Wages Due Upon Separation of Employment; 5) Violation of Business and Professions Code §§ 17200 ("Unfair Practices"); and 6) Civil Penalties Under PAGA. FAC. Staffmark argues that Plaintiff's first five claims are directly related to, and arise out of, Plaintiff's employment relationship with Staffmark, and thus are subject to arbitration under the Arbitration Agreement. Mot. 13. Staffmark's counsel has attempted to correspond with Plaintiff's counsel regarding arbitration. Declaration of Susan Steward ("Steward Decl.") ¶ 3, ECF 22-4. Plaintiff's counsel has maintained that the Arbitration Agreement is unenforceable and has refused to submit the claims to arbitration. Steward Decl. ¶¶ 5, 7. Staffmark accordingly brings this action to compel arbitration. *See generally,* Mot.

## II.  LEGAL STANDARD

Enforceability of an arbitration clause, and the determination of the scope of that clause, is governed by the Federal Arbitration Act ("FAA").  9 U.S.C. §§ 1 et seq.  Under the FAA, arbitration agreements are "a matter of contract," and "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

A district court faced with a petition to enforce an arbitration clause engages in a limited two-part inquiry: first, it determines whether the arbitration agreement is valid, and second, it determines whether the agreement encompasses the claims at issue.  *See, e.g., Mitsubishi Motors*

5

*Co. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 627–28 (1985); *see also Trompeter v. Ally Financial, Inc.*, 914 F. Supp. 2d 1067, 1071 (N.D. Cal. 2012) ("A district court must compel arbitration under the FAA if it determines that: (1) there exists a valid agreement to arbitrate; and (2) the dispute falls within its terms."). A district court does not consider challenges to the contract as a whole, but rather only specific challenges to the validity of the arbitration clause itself. *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 71 (2010) ("There are two types of validity challenges under § 2: 'one type challenges specifically the validity of the agreement to arbitrate,' and 'the other challenges the contract as a whole.' . . . [O]nly the first type of challenge is relevant to a court's determination whether the arbitration agreement at issue is enforceable.").

When determining whether the arbitration clause encompasses the claims at issue, "all doubts are to be resolved in favor of arbitrability." *Simula v. Autoliv*, 175 F.3d 716, 721 (9th Cir. 1999) (interpreting the language "arising in connection with" in an arbitration clause to "reach[] every dispute between the parties having a significant relationship to the contract and all disputes having their origin or genesis in the contract.").

### III.   DISCUSSION

#### A.   Motions to Compel Arbitration

First, the Court must determine whether the parties agreed to arbitrate. Staffmark has provided sufficient evidence that Plaintiff knowingly digitally signed the arbitration agreement. *See* Perry Decl. ¶¶ 20-37 (stating that Plaintiff electronically accessed and signed the arbitration agreement using a personal password and that Plaintiff was made aware of and able to carefully examine the Arbitration Agreement multiple times prior to completing the onboarding process).

Plaintiff does not contest the fact that she willingly and knowingly signed the Arbitration Agreement. *See generally* Opp'n.

Second, the Court must determine whether the scope of the Arbitration Agreement encompasses the employment claims at issue. The Arbitration Agreement narrows the scope of arbitration to employment-related claims: "This Agreement between the Parties establishes procedures for resolution by arbitration of any Employment Claim(s) arising out of Employee's application . . . with Company." CA Standard Arbitration Agreement 15. The Arbitration Agreement further explicitly defines Employment Claims as those such as: "claims arising out of; claims for non-payment of wages, overtime, other compensation or penalties due . . . and claims for violation of any federal, state, or other government law, statute, regulation or ordinance, except for claims excluded in the following paragraph." *Id*. Plaintiff's Claims One through Five arise out of failure to provide meal periods, rest breaks, wages, and unfair practices arising from the same conduct. FAC. Accordingly, Plaintiff's Claims One through Five fall clearly under the Agreement's coverage. Plaintiff does not challenge that the Agreement covers these Claims. *See generally* Opp'n. Rather, Plaintiff argues she is exempt from the provisions of the FAA under Section 1 as a transportation worker. *Id*. at 2.

The Court finds that an arbitration agreement exists between Staffmark and Plaintiff, and it encompasses the employment issues in dispute in Plaintiff's Claims One through Five. The Court now considers whether Plaintiff qualifies as a transportation worker under Section 1 of the FAA.

    **i.**     **FAA Section 1 Exemption**

7

Plaintiff argues that transportation workers, including postal workers such as herself, are exempt from the provisions of the FAA under Section 1. Opp'n. 2. Staffmark argues that the Section 1 transportation worker exemption does not apply here because Plaintiff's duties at UPSMI do not qualify her as a transportation worker under current case law. Reply. 2. The Court agrees with Staffmark that Plaintiff does not qualify as a transportation worker under Section 1 such that she is exempt from the FAA.[2]

Section 1 of the FAA contains a transportation worker exemption, which exempts from coverage of the FAA all "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. In *Circuit City Stores Inc v. Adams*, the Supreme Court narrowed the application of "any other class of workers engaged in foreign or interstate commerce" from all workers in foreign or interstate commerce, to only "transportation workers." 532 U.S. 105, 119 (2001). The Court further defined "transportation workers" as "those workers actually engaged in the movement of goods in interstate commerce." *Id.* at 112. However, the Court did not address what it means to be "actually engaged in the movement of goods in interstate commerce." Since *Circuit City*, the lower courts have provided guidance as to what qualifies an individual as a transportation worker.

Courts have clearly established that an individual who is a driver and is directly engaged in the interstate delivery of goods is a transportation worker under Section 1. *Veliz v. Cintas Corp.*,

---

[2] Plaintiff further argues that under California law, which should apply instead of the FAA, the Arbitration Agreement's class action waiver is unenforceable. Opp'n. 4. Since the Court finds that the FAA does apply and Plaintiff is not exempt under Section 1, it does not reach the question of whether the class action waiver is enforceable under California law.

No. C 03-1180 SBA, 2004 WL 2452851, at *5 (N.D. Cal. Apr. 5, 2004), *modified on reconsideration*, No. 03-01180(SBA), 2005 WL 1048699 (N.D. Cal. May 4, 2005) ("The most obvious case where a plaintiff falls under the FAA exemption is where the plaintiff directly transports goods in interstate, such as interstate truck driver whose primary function is to deliver mailing packages from one state into another."); *Furlough v. Capstone Logistics, LLC*, No. 18-CV-02990-SVK, 2019 WL 2076723, at *7 (N.D. Cal. May 10, 2019) (affirming *Veliz* and finding that "plaintiffs who are personally responsible for transporting goods in interstate commerce, no matter what industry they are in, are transportation workers under the FAA exemption.").

Courts have applied the exemption to individuals who do not physically transport packages. However, in these cases, the individual was both 1) employed in the transportation industry and 2) working closely with those who were physically transporting goods. *See Palko v. Airborne Express, Inc.*, 372 F.3d 588, 593–94 (3d Cir. 2003) (finding that a manager who does not herself deliver packages, but who personally monitors and directs interstate drivers who do, is a transportation worker); *Zamora v. Swift Transp. Corp.*, No. EP-07-CA-00400-KC, 2008 WL 2369769, at *9 (W.D. Tex. June 3, 2008), *aff'd,* 319 F. App'x 333 (5th Cir. 2009) (same). Courts have also established that individuals are not transportation workers when they handle, but don't deliver, goods that are part of interstate commerce and do not otherwise work in the transportation industry. *See Furlough*, 2019 WL 2076723, at *7 (holding that a warehouseman whose job duties included "loading, unloading, and handling freight; communicating with drivers; and monitoring conditions on the docks" was not a transportation worker); *Kropfelder v. Snap-On Tools Corp.*, 859 F. Supp. 952, 958–59 (D. Md. 1994) (finding that warehousemen who load and unload trucks

used to deliver goods in interstate commerce, but do not deliver the goods themselves, are not transportation workers).

Here, Plaintiff neither physically transports goods herself, nor does she work closely with those who do. Plaintiff's work at the UPSMI center was limited to processing and sorting packages that were received in the UPSMI facility. Declaration of Tracee Sheppard ("Sheppard Decl.") ¶¶ 3-4. Third-party drivers delivered packages to the UPSMI facility and picked them up for delivery to another location after they were sorted. Declaration of Charles Coleman ("Coleman Decl.") ¶¶ 6-9. Plaintiff does not assert that she had any contact with the employees who delivered packages, or that Plaintiff was even responsible for loading the packages onto the delivery truck. *See generally,* Sheppard Decl. Plaintiff's responsibilities at UPSMI were similar to those of the warehouse employees that courts found do not qualify an individual as a transportation worker. *See Furlough*, 2019 WL 2076723, at \*7; *Kropfelder*, 859 F. Supp. at 958–59.

While Plaintiff argues that she worked in the transportation industry through her employment at UPSMI, Opp'n 3-4, whether or not her employer worked in the transportation industry is not dispositive of this case. Under existing case law, working in the transportation industry alone, without a strong connection to the employees who are actually transporting products, is not sufficient to qualify an individual as a transportation worker. This is highlighted in *Zamara* and *Palcko*, two post-*Circuit City* cases which found that an individual who was closely connected to the employees who physically transported products qualified as a transportation worker. In both of these cases, the courts did consider that the individual was employed by a company involved in the transportation industry in favor of qualifying the individual as a transportation worker. *See Zamora,* 2008 WL 2369769, at \*7; *Palcko*, 2003 WL 21077048, at \*3.

However, both courts also emphasized that what was critical to their decision was that the employee oversaw and worked closely with those involved in the actual transportation of the goods, making their role akin to that of the actual transporters. *See Palko v. Airborne Express, Inc.*, 2003 WL 21077048, at *3 ("Because [plaintiff] oversaw the delivery of goods, her job was so closely related to the transport of the goods as to be in practical effect part of the shipping of the goods and she should be considered a transportation worker.") (internal quotation marks omitted); *Zamora*, 2008 WL 2369769, at *7 ("[Plaintiff] was employed to ensure the smooth and continuing operation of the trucks and their drivers in interstate commerce. This factor weighs heavily in favor of a finding that [plaintiff] was a transportation worker."). Plaintiff admits that her job responsibilities at UPSMI did not require her to engage with the actual transportation drivers, but rather that she was limited to sorting packages in the warehouse in preparation for further transportation. Sheppard Decl. ¶¶ 3-4. Therefore, the fact that Plaintiff may have been working for an employer in the transportation industry does not determine her eligibility for the FAA Section 1 exemption given her lack of connection to the actual delivery drivers.

Plaintiff's reliance on *Basachihua v. U.S. Postal Service*, 859 F.2d 402, 405 (6th Cir. 1988) and *American Postal Workers Union, AFL-CIO v. U.S. Postal Service*, 823 F.2d 466, 473 (11th Cir. 1987) to support that she, a postal worker, qualifies as a transportation worker is not persuasive as both cases predate the Supreme Court's ruling in *Circuit City*. The courts in *Basachihua* and *American Postal Workers Union* held that postal workers qualify as transportation workers engaged in "interstate commerce" for purposes of the Section 1 exemption. *Basachihua*, 859 F.2d at 405, *American Postal Workers Union*, 823 F.2d at 473. Both of these cases were decided pre-*Circuit City*, where the Court significantly narrowed the Section 1 exemption. *See*

*Circuit City*, 532 U.S. at 119. Although not explicitly overruling *Basachihua* and *American Postal Workers Union*, the Court's suggestion in *Circuit City* that the exemption be limited to those individuals "directly involved in interstate transportation" seems to conflict with the broad holdings of *Basachihua* and *American Postal Workers Union* that any postal worker is a transportation worker. No court post-*Circuit City* has applied the holding of *Basachihua* and *American Postal Workers Union* to support that all postal workers are transportation workers as Plaintiff wishes to, and a number of courts, including courts in this district, have commented that *Basachihua* and *American Postal Workers Union* may no longer remain good law. *Veliz*, 2004 WL 2452851, at *6 (noting about *Basachihua* and *American Postal Workers Union,* "[i]t is unclear to what degree these cases remain good law."). As such, this Court is not persuaded by Plaintiff's argument.

Plaintiff also cites *Rittmann v. Amazon.com, Inc.*, 971 F.3d 904 (9th Cir. 2020) for support that Plaintiff need not have crossed state lines to qualify as a transportation worker. Opp'n. 4. While Plaintiff is correct that she does not have to cross state lines to qualify as a transportation worker, this issue is not in debate here, and *Rittmann* does not further support that Plaintiff is a transportation worker. In *Rittmann,* the court evaluated whether workers who delivered interstate packages exclusively in the last leg of the journey, which was only intrastate, qualified as transportation workers under Section 1. *Id.* at 915. The *Rittmann* court held that the drivers qualified as transportation workers, relying on the fact that they still physically moved packages that had at one point crossed state lines. *Id.* This Court acknowledges that individuals who physically transport packages qualify as transportation workers, but that is a factually distinct circumstance from this case. The issue that is relevant in this case, which the *Rittmann* court does

not address, is whether individuals who do not actually transport packages can still qualify as transportation workers. Accordingly, *Rittmann* is not instructive here.

### ii. Enforcement of Arbitration Agreement Against UPSMI

Staffmark argues that the Arbitration Agreement should be enforced as to UPSMI such that Plaintiff must also be ordered to arbitrate her Claims One through Five against UPSMI. Mot. 21. Plaintiff does not suggest that a different analysis would apply to UPSMI. *See generally* Opp'n. UPSMI has also filed its own Motion to Compel Arbitration, UPSMI Mot., and Plaintiff filed no opposition to USPMI's motion to compel arbitration. The Court finds it appropriate to enforce the Agreement as to Plaintiff's claims against UPSMI.

An individual who is a non-signatory to an arbitration agreement may nevertheless compel a signatory plaintiff into arbitration if allowed by state contract law. *See Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631–32 (2009); *see also Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1130 n.5 (9th Cir. 2013). In California, a non-signatory may compel arbitration under the doctrine of equitable estoppel where a plaintiff's claims against the non-signatory are "based on the same facts and are inherently inseparable" to those against a signatory. *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1229 (9th Cir. 2013) (*quoting Metalclad Corp. v. Ventana Envtl. Organizational P'ship*, 109 Cal. App. 4th 1705, 1713 (Cal. Ct. App. 2003)).

The California Court of Appeal's decision in *Garcia v. Pexco, LLC,* 11 Cal. App. 5th 782, 217 Cal. Rptr. 3d 793 (Cal. Ct. App. 2017) is instructive here. In *Garcia*, the plaintiff was employed by a staffing agency, with whom he signed an employment agreement containing an arbitration provision. *Id.* at 794. The staffing agency placed the plaintiff on a temporary

13

assignment at Pexco. *Id.* Arising out of events that occurred during this assignment, the plaintiff sued both the staffing company and Pexco for violations of the Labor Code and unfair business practices. *Id.* at 794-95. The court held that plaintiff's claims against both the staffing agency and Pexco should be compelled into arbitration, because they were "intimately founded in and intertwined with his employment relationship with [staffing agency], which is governed by the employment agreement compelling arbitration." *Id.* at 796. In support, the court noted that plaintiff's complaint alleged that the defendants were agents of each other, did not differentiate between the two defendants in any way, and relied on the same set of facts in its allegations against Pexco as it did the staffing agency. *Id.* at 797.

This case here is nearly identical. Plaintiff's claims against Staffmark are all based on her placement at UPSMI. *See generally,* FAC. In her FAC, Plaintiff alleges that she was jointly employed by Staffmark and UPSMI, and that they were agents of each other. FAC ¶¶ 13-15. Further, Plaintiff refers to both Staffmark and UPSMI as "Defendants" collectively and does not differentiate between the two throughout the FAC. *See generally* FAC. Plaintiff relies on the same set of facts in her FAC to support her allegations against both Staffmark and UPSMI. *See id.* The Court finds that Plaintiff's claims against UPSMI, like in *Pexco*, are so "intimately founded in and intertwined with" her employment relationship with Staffmark that they should also be governed by the Arbitration Agreement. *See also Ortiz v. Volt Mgmt. Corp.*, No. 16-CV-07096-YGR, 2017 WL 2404977, at \*2 (N.D. Cal. June 2, 2017) (upholding *Pexco* and compelling arbitration in a case where plaintiff brought claims against a staffing agency and the company where the plaintiff was temporarily placed).

14

### B. Motion to Stay

#### i. Plaintiff's Individual and Class Claims

Staffmark requests that the Court stay this entire action until the completion of arbitration. *See* Mot. 8. The Court in its discretion instead dismisses Plaintiff's individual and class action Claims One through Five.

Section 3 of the FAA provides that the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had." 9 U.S.C. § 3. However, in the Ninth Circuit, "notwithstanding the language of § 3, a district court may ... dismiss [an action] outright when ... the court determines that all of the claims raised in the action are subject to arbitration." *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1074 (9th Cir. 2014). As the Court declines to exercise supplemental jurisdiction over Plaintiff's PAGA claim, and the remaining claims are subject to arbitration, the Court chooses to dismiss Plaintiff's individual Claims One through Five without prejudice. *See Hernandez v. MasterCorp, Inc.*, No. CV 20-6284-JFW(ASX), 2020 WL 6747381, at *5 n.1 (C.D. Cal. Sept. 15, 2020) (noting that the court is acting in its discretion to dismiss plaintiff's individual claims, which were subject to arbitration, after declining to exercise supplemental jurisdiction over the remaining PAGA claim).

The Arbitration Agreement also provides that "the parties agree that they shall not join or consolidate claims submitted for arbitration under this Agreement with those of any other persons, and that no form of class, collective, or representative action shall be maintained without the mutual consent to the parties." CA Standard Arbitration Agreement 14. Class action waivers are enforceable under the FAA and California state law. *See e.g., AT&T Mobility, LLC v. Concepcion*,

563 U.S. 333, 343-351 (2011); *Kilgore v. KeyBank, Nat. Ass'n*, 673 F.3d 947, 951 (9th Cir. 2012). Accordingly, the Court also finds that Plaintiff's class claims should be dismissed with prejudice as to Plaintiff and dismissed without prejudice as to the putative class members.

### ii. Plaintiff's PAGA Claim

Staffmark also requests that the Court stay Plaintiff's PAGA claim until the completion of arbitration. *See* Mot. 24. Since the Court has dismissed Plaintiff's arbitrable claims, and the state law PAGA claim is all that remains of Plaintiff's lawsuit, in the interest of judicial efficiency and fairness the Court declines to extend supplemental jurisdiction over the PAGA claim and instead remands the PAGA claim to state court where it was originally filed.

The Court has original jurisdiction "of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Where a party asserts that the Class Action Fairness Act ("CAFA") gives rise to subject matter jurisdiction for a PAGA claim, the "[r]epresentative action under California's [PAGA] [is] not a 'class action' within meaning of Class Action Fairness Act (CAFA), as required to allow district court to exercise original jurisdiction over PAGA action." *Baumann v. Chase Inv. Servs. Corp.*, 747 F.3d 1117, 1122-23 (9th Cir. 2014); *see also id.,* 747 F.3d at 1119 (holding "CAFA provides no basis for federal jurisdiction" over a PAGA action); *Echevarria v. Aerotek, Inc.*, 814 Fed. Appx. 321, 322 (9th Cir. 2020) (affirming district court's ruling that CAFA jurisdiction does not apply to Plaintiff's remaining PAGA claim once the class action claims were dismissed).

The Court can properly exercise supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). The doctrine

of supplemental jurisdiction "is a doctrine of discretion, not of plaintiff's right." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966); *see also Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1181 (9th Cir. 2004) ("Like our sister circuits, we hold that the actual exercise of personal pendent jurisdiction in a particular case is within the discretion of the district court.").

Section 1367(c) outlines when it is appropriate for a federal court to decline to exercise supplemental jurisdiction:

> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).

This Court has a duty to exercise its discretion when "deciding whether to decline, or to retain, supplemental jurisdiction over state law claims when any factor in subdivision (c) is implicated." *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997). Where subject matter jurisdiction is based on federal question, the Ninth Circuit has held that "[i]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims." *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7 (1988)). Applying these factors to the instant case, this Court finds it appropriate to decline supplemental jurisdiction over the remaining PAGA claim.

Declining supplemental jurisdiction would serve the interest of judicial economy, fairness, and convenience. While both parties have invested resources into this litigation, this Court has not yet considered the merits of the PAGA claim. *See Echevarria*, 2019 WL 2503377 (finding no economy lost by remanding a PAGA claim to state court where the district court had not yet considered the PAGA claim's merits). Moreover, to date there has been no substantive motion practice, and no trial date has been set. Accordingly, "the Court's continued adjudication of the PAGA claims would not serve judicial efficiency or economy." *Wellons v. PNS Stores, Inc.*, No. 18-CV-2913 TWR (DEB), 2020 WL 6203361, at *2 (S.D. Cal. Oct. 20, 2020). The state court will provide an equally fair adjudication of the remaining PAGA claim. *Id*. at *3. This factor favors declining supplemental jurisdiction over the PAGA claim.

Second, comity weighs in favor of declining supplemental jurisdiction. PAGA is founded solely in state law, and the primary responsibility for developing and applying state law rests with the California courts. *See generally Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425, 429 (9th Cir. 2015) (discussing history and purpose of PAGA); *see also Rodriguez v. Emeritus Corp.*, No. 18-CV-00341-KJM-CKD, 2018 WL 4214922, at *6 (E.D. Cal. Sept. 5, 2018) (declining to exercise supplemental jurisdiction over PAGA claim and remanding PAGA claim to state court once all other claims were dismissed). State courts have an interest in adjudicating the PAGA claim, especially where most of the alleged acts took place within California, and the parties are either California residents or California businesses. This factor also favors declining supplemental jurisdiction.

In lights of these factors, the Court declines supplemental jurisdiction over the remaining PAGA claim under 28 U.S.C § 1367(c)(3) and remands the PAGA claim to state court where it

was originally filed. *See Hernandez*, 2020 WL 6747381, at *5 (declining to exercise supplemental jurisdiction over plaintiff's PAGA claim after dismissing all other arbitrable claims in the action).

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' Motions to Compel Arbitration for Plaintiff's individual Claims One through Five against Staffmark and UPSMI, and those claims are DISMISSED WITHOUT PREJUDICE. Plaintiff's class claims are DISMISSED WITH PREJUDICE as to Plaintiff and DISMISSED WITHOUT PREJUDICE as to the putative class members. The PAGA claim is REMANDED to the Santa Clara County Superior Court. The Clerk shall close the case.

**IT IS SO ORDERED.**

Dated: February 23, 2021

_____
BETH LABSON FREEMAN
United States District Judge

19